## No. 14,140.

### JOHN T. PRUDE VS. D. H. SEBASTIAN ET AL.

#### SYLLABUS.

A person cannot claim damages from another for loss of prospective profits of his business by reason of his having forced him to discontinue it by threats, where it is shown that the business which was discontinued was the illegal selling of intoxicating liquors without a license.

A person cannot make the forced discontinuance of an illegal act simply through threats, the foundation of a legal right.

*Ex dolo malo non oritur actio.* A person seeking damages should come into court with clean hands. (State vs. McMaster, 2 La. 331; Boulard vs. Calhoun, 13th Ann. 445).

A PPEAL from the Twelfth Judicial District, Parish of DeSoto.— *Lee, J.*

*George E. Head,* and *C. C. Egan,* for Plaintiff, Appellant.

*Charles W. Elam,* for Defendant, Appellee.

The opinion of the court was delivered by

NICHOLLS, C. J. The plaintiff sued to recover a judgment *in solido* against five citizens of DeSoto parish, for damages which he alleged he had suffered from their acts. He alleged that for several years prior to and up to the spring of 1890, he had owned and carried on a mercantile business in the town of Benson in that parish, his establishment constantly carrying a stock of drugs, chemicals, etc., from six hundred to one thousand dollars in value. That he realized an annual net profit out of the proceeds of the sale of said merchandise of from one thousand to fifteen hundred dollars a year. That during the winter and spring of 1899-1900, while he was lawfully engaged in carrying on his said business, he, and his agent in charge of the same, began to receive at stated intervals threatening letters, and open threats were freely indulged in and public meetings of an incendiary

character held in said town, to each and all of which the defendants were parties, participants and accomplices wilfully and without excuse or warrant in law, which letters and public meetings and demonstrations had for their sole object and purpose to brow beat, terrorize and intimidate him and his agent and thereby force him to close up his establishment and break him up in his mercantile business; that in said letters and at said meetings threats of violence and force were made and concurred in on the part of the defendants against him and his business, and they more than once went so far as to threaten to burn him out if he did not at once discontinue his said business, and his said agent did not at once depart from said town of Benson. That on account of said threats and public demonstrations he was put in fear, harrassed and made afraid to longer continue his said mercantile business, and, therefore, on or about the month of March, 1900, he closed his doors and discontinued the same, notwithstanding that he had previously paid his license and contracted for insurance and for rent of the building in which his business was conducted for the year 1900; that the said stock of goods at once became dead capital and up to the time of suit had perished and deteriorated until it was nearly if not entirely ruined; that said stock of goods was formerly well worth the sum of seven hundred and fifty dollars; that he had thereby suffered damages to his feelings, credit and general reputation and standing in the sum of fifteen hundred dollars, and had thereby lost and failed to realize the sum of fifteen hundred dollars profit out of the said business.

The defendants prayed *oyer* of the threatening letters referred to and called for a detailed statement of the losses and damages he claims to have sustained.

In reply to the demand for a detailed statement of losses and damages, plaintiff filed, besides the claim for $1500 for profits lost, the following specifications of loss and damage:

| | |
|---|---:|
| Loss of drugs and medicines | $550 00 |
| Loss of confectionaries | 20 00 |
| Loss of stationery and toilet articles | 130 00 |
| Damage to credit | 750 00 |
| Damage to general reputation | 400 00 |
| Damage to feelings | 350 00 |
| Total | $2,550 00 |

In answer to prayer for *oyer* plaintiff filed the following document as the cause of the damages sustained:

BENSON, LA., March 19, 1900.

*Mr. John T. Prude, Cook, Louisiana.*

Dear Sir: The citizens of Benson came together this morning to take action in regard to the unlawful selling of whiskey here by Dr. Jno. Walker. Matters having come to that pass, until the good people resolved not to submit longer. In said meeting of the citizens it was resolved that Dr. Walker must leave this place, the people placing no confidence in his promise to quit dealing out whiskey. It was further resolved that you be notified that we will no longer submit to the sale or unlawful handling of whiskey in our midst. Said resolve, further, that we notify you that we have no objection to your running a drugstore here, provided you place a moral, sober man in charge and that whiskey cease once for all.

That, in the event whiskey selling is resumed here, you are hereby notified that you must assume the consequences of such actions as the citizens may take."

Signed:

R. Y. BEST.
D. H. SEBASTIAN.
I. J. BEST.
R. F. BEST.
R. T. PHILIPPS.

And numbers of other citizens of Benson.

Defendants answered. After pleading the general issue, they admitted that they had signed the letter produced and filed by the plaintiff.

They then alleged that the plaintiff had been a long time carrying on, under guise of its being a drugstore, an establishment at which whiskey and other intoxicating liquors were habitually sold in contravention of law; that the establishment was a disorderly house and a public and private nuisance. That the plaintiff had placed a person named Walker to conduct the business, for the reason that he held the diploma of some college as a physician, and he could and did constantly sell liquors illegally, under claim of its being sold for prescriptions for sickness. They set out what they alleged to be a history of plaintiff's action and that of Walker in that connection in the parish. They averred that matters reached such a pass that the

grand jury found one or more indictments against Walker for selling intoxicating liquors without a license; that, upon trial, he was found guilty, convicted and fined; that, notwithstanding such conviction and fine, the plaintiff and Walker continued in the same course, which culminated by the killing of one boy by another, the boy doing the killing being under the influence of liquor obtained at plaintiff's so-called drugstore; that forbearance having ceased to be a virtue, defendants and other citizens of the community on the heels of the killing held a mass meeting and adopted the resolutions filed in the case; that the same contained no threat of violence to person or property; did not require or suggest that plaintiff should cease to operate a legitimate drug business, but was intended to signify to plaintiff that if his illegal business of selling intoxicating liquors was not stopped, the citizens would see that he should be prosecuted to the full extent of the law; that said resolutions had no effect, and plaintiff and Walker continuing their illegal business, an indictment was found against them under which they were tried, found guilty and sentenced; that it was only then that they ceased operating their business, and the cessation of the same was caused by said sentence and the imprisonment of Walker, and not by the resolutions which had been adopted and signed some time before the mass meeting; that defendants made no threats against the plaintiff and did not force him to close his business; that subsequent to the said conviction plaintiff ceased business in the town and removed his stock of goods therefrom; that he had since sold his goods and had suffered no loss thereon.

They denied that plaintiff had suffered any injury to his feelings, credit or general reputation by reason of any act of theirs, and averred if he had suffered any injury, it was the result of his own acts.

Assuming the position of plaintiffs in reconvention, they averred that plaintiff's suit had been promoted by malice and a spirit of revenge and to annoy and harass them; that they had been put to great expense and to great trouble, annoyance and loss of time, and they would have to pay attorneys' fees for defending the suit. They prayed for judgment in reconvention for fifteen hundred dollars.

The case was tried by a jury which returned a verdict in favor of the defendants and against the plaintiff.

The plaintiff moved for a new trial, on the ground that the verdict was contrary to the law and the evidence. The new trial was refused. and judgment was rendered rejecting plaintiff's demand and dismissing his suit with costs. Plaintiff appealed.

Prude vs. Sebastian et al.

We have examined the evidence in this case with great care. We are satisfied that the verdict of the jury and the judgment of the Court were correct. Plaintiff was unquestionably, at the time of the mass meeting and the adoption by it of the resolutions referred to in the pleadings, conducting an establishment designated by him as a drugstore, which was in reality a place for the selling of intoxicating liquors, without a license, under guise of being sold for medicinal purposes, under a physician's certificate. There was a small stock of old drugs in the building, of which there was an occasional sale, but the bulk of the business consisted in the sale of intoxicating liquors. The drugstore *per se* was not a paying investment, and we do not think was expected to be such. The mass meeting and resolutions adopted by it do not seem to have placed the plaintiff in fear, as the establishment was kept open after the letter in the record had been delivered to him. The stock, such as it was, was withdrawn by the plaintiff at his leisure and the greater part of it lost to the plaintiff, according to plaintiff's own testimony, not by reason of any acts of the defendants, but because of its being taken away from Benson in barrels of sawdust which became wet and caused the labels on the jars and bottles to fall off, making it impossible to ascertain what their contents were. Plaintiff testifies that he has still the stock on his hands, but that it is unsaleable.

We are convinced that the breaking up of plaintiff's establishment was due to prosecutions brought against Walker and himself for selling liquors without a license and their conviction under the charge, coupled with the fact that the carrying on of the "drugstore," as such, would be a losing business.

If plaintiff's business, prior to his discontinuing it in Benson, was remunerative, it was from that portion of the same which represented the illegal sales of intoxicating liquors; but even were it remunerative as a whole, we could have no means of separating the profits resulting from legitimate and from illicit trade. Plaintiff could certainly not expect a court to award him profits on an illegal business. Cooley on Torts, Section 43, declares that "a person cannot make his own illegal action the foundation of a legal right."

"Therefore, if, as a consequence of his own illegal action, he suffers a wrong, he must not look to the law for redress. *Ex dolo malo non oritur actio.* He has invited what has come, and he must accept it." That proposition may be too broadly stated, but we think it applicable to this particular case.

In State vs. McMaster and Beckwith (2 La., 331), this Court said that "one whose conduct has somewhat induced a quasi offense can recover but a bare indemnity," while in Boulard vs. Calhoun, 13 Ann. 445, it declared that litigants should present themselves with clean hands, and one who invokes from the justice of the country large vindictive damages for a violation of sacred rights guaranteed by its laws should take heed that his own habitual violation of the laws has not made him a nuisance to the community where he resides. We will not undertake to discuss the precise circumstances under which no redress whatever should be accorded and those where some, though limited, redress should be given.

In the case at bar no violence to person was attempted and no attack upon property was made. Defendants went no further than to threaten the plaintiff. He construed the threat to mean that the citizens of Benson would thereafter do him personal injury and destroy his property. Defendants deny that such was the purpose of the people. However this may be, the result shows that no attack was made either on plaintiff's person or his property. Plaintiff did not alter his conduct by reason of the threat, and the evidence shows no pecuniary damage resulting to him from it. We see no ground for supposing that the defendants, through any act of theirs, caused injury to plaintiff's feelings, credit or reputation.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be, and the same is hereby affirmed.